UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PATRICIA RENEA CLANCE,

      Plaintiff,

v.                                      CASE No. 8:20-cv-557-T-SPF

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

## ORDER

Plaintiff seeks judicial review of the denial of her claim for a period of disability and Supplemental Security Income ("SSI"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed the proper legal standards, the Commissioner's decision is affirmed.

### I.    Procedural Background

Plaintiff filed an application for a period of disability and SSI (Tr. 165-73).[1] The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 93-95, 100-04). Plaintiff then requested an administrative hearing (Tr. 105-07). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 29-58). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 12-28). Subsequently, Plaintiff

---

[1] All references to "Tr." refer to the transcript and page numbers of the Social Security administrative record filed on September 25, 2020 (Doc. 16).

requested review from the Appeals Council ("AC"), which the AC denied (Tr. 1-6). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.   Factual Background and the ALJ's Decision

Plaintiff, who was born in 1970, claimed disability beginning July 11, 2016 due to stage one lung cancer, emphysema, and chronic obstructive pulmonary disease ("COPD") (Tr. 165, 191). Plaintiff dropped out of high school in the tenth grade and has past relevant work experience as a timekeeper at a die casting company (Tr. 18, 539).[2]

In rendering the administrative decision, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since July 14, 2016, the application date (Tr. 17). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: COPD, emphysema, cancer of the right lung status-post thoracotomy and lobectomy, and status-post right pneumothorax (*Id.*). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (*Id.*). The ALJ then concluded that Plaintiff retained the residual functional capacity ("RFC") to perform a limited range of sedentary work as defined in 20 C.F.R. § 416.967(b) (Tr. 18). The ALJ determined that Plaintiff can never climb ladders, ropes, scaffolds, ramps, or stairs; can occasionally balance, stoop, kneel, crouch, and crawl;

---

[2]  Plaintiff testified she was "a hole watcher and a fire watcher" for Casting Energy Company (Tr. 550). She described her work: "It's like where they'll shut down these boilers and a man has to go in the hole to weld and they can only be in there so long and then you have to pull them out . . . I ring a bell and they come out of the hole." (*Id.*).

and must avoid concentrated exposure to extreme heat or humidity, and avoid even moderate exposure to irritants such as fumes, odors, dusts, gases, and poorly ventilated areas (*Id.*). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 19).

Given Plaintiff's background and RFC, the vocational expert ("VE") testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as general clerical worker, hand packer, and inspector (Tr. 24).  Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (*Id.*).

### III.   Legal Standard

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, to regularize the adjudicative process, promulgated detailed regulations that establish a "sequential evaluation process" to determine if a claimant is disabled. 20 C.F.R. § 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. § 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given

to the legal conclusions.  *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal.  *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## IV.    Analysis

Plaintiff argues the ALJ violated agency regulations found in the Hearings, Appeals and Litigation Law Manual ("HALLEX"), an internal policy manual, by not proffering to Plaintiff a copy of Thomas Beaman, D.O.'s consultative examination report and not permitting her to either respond to the report in writing, subpoena the doctor, or request a supplemental hearing.  And Plaintiff contends the AC violated HALLEX by not remanding her case to the ALJ to correct this error.  According to Plaintiff, these violations prejudiced her, depriving her of due process.  Plaintiff also argues the ALJ erred in formulating her RFC and improperly discounted her subjective pain complaints (Doc. 26 at 7-32).   For the following reasons, the Court finds that substantial evidence supports the ALJ's decision.

### A. HALLEX and Dr. Beaman's Report

Dr. Beaman conducted a consultative examination of Plaintiff on November 14, 2018, two days before Plaintiff's administrative hearing (Tr. 519-32).[3] Dr. Beaman did not complete his report in time for the hearing; the record shows the agency received it on November 20, 2018 (*Id.*). But there is no record evidence that Plaintiff received the report or was informed it was available.[4] Citing HALLEX, Plaintiff argues this oversight violated her due process rights and was compounded by the AC, which should have remanded her case to the ALJ for a supplemental hearing but did not. The Commissioner counters that HALLEX creates no leally enforceable rights and, even if it did and the agency did not follow its internal regulations, Plaintiff has not shown prejudice.

Social Security proceedings are inquisitorial rather than adversarial, and the ALJ has the duty "to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000). The ALJ "has a basic obligation to develop a full and fair record." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). But "there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner]" to develop the record. *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997). "The court should

---

[3] Plaintiff's consultative exam was originally scheduled for October 11, 2018, but she testified she missed the appointment because she was visiting a sick relative in Georgia (Tr. 538). She rescheduled the exam with Dr. Beaman for November 14, 2018. Plaintiff's hearing was November 16, 2018 (Tr. 536), and the fax header on Dr. Beaman's report is stamped November 20, 2018 (Tr. 519).

[4] In his decision the ALJ stated: "A consultative examination was received after the hearing (Ex. 16F) and proffered to the claimant with no response." (Tr. 15) Plaintiff represents this proffer never occurred, and the Commissioner does not challenge this.

be guided by whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Id.* (internal citation and quotation marks omitted).

HALLEX is "a policy manual written by the [SSA] to provide guidance on procedural matters." *Carroll v. Comm'r of Soc. Sec.*, 453 F. App'x 889, 892 (11th Cir. 2011). The Eleventh Circuit has not decided whether HALLEX creates judicially enforceable rights. *See McCabe v. Comm'r of Soc. Sec.*, 661 F. App'x 596, 599 (11th Cir. 2016); *George v. Astrue*, 338 F. App'x 803, 804-05 (11th Cir. 2009). Other circuit and district courts have concluded that HALLEX creates no legally enforceable rights. *See Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 859 (3d Cir. 2007); *Moore v. Apfel*, 216 F.3d 864, 868-69 (9th Cir. 2000); *Hall v. Comm'r of Soc. Sec.*, No. 2:05-cv-559-FtM-29SPC, 2007 WL 4981325, at * 10 (M.D. Fla. Feb. 9, 2007). Even if HALLEX does carry the force of law – a "very big assumption," *George*, 338 F. App'x at 805 – remand is required only if the ALJ violates HALLEX procedures and only if the violation prejudices the claimant. *McCabe*, 661 F. App'x at 599 (even if HALLEX binding, mere showing that agency violated HALLEX not enough for remand, plaintiff must show prejudice); *Carroll*, 453 F. App'x at 892 (finding that "an agency's violation of its own governing rules must result in prejudice before [the court] will remand to the agency for compliance") (citation omitted); *Cohan v. Comm'r of Soc. Sec.*, No. 6:10-cv-719-Orl-35DAB, 2011 WL 3319608, at *5 (M.D. Fla. July 29, 2011) (same). "[The] claimant cannot show prejudice by speculating that she would have benefitted from a more comprehensive hearing." *McCabe*, 661 F. App'x at 599. Instead, a claimant shows prejudice when "the ALJ did not have all the relevant evidence before him or did not consider the evidence in reaching his decision." *Id.*

Here, the relevant HALLEX provision states:

> When an [ALJ] receives additional evidence after the hearing from a source
> other than the claimant or the appointed representative, if any, and the ALJ
> proposes to admit the evidence into the record, he or she will proffer the
> evidence to the claimant and appointed representative, if any. . . . When proffer
> is required, the ALJ will usually offer the claimant an opportunity for a
> supplemental hearing.  See Subsection C below.  Note:  An ALJ must always
> proffer . . . posthearing consultative examination reports.

HALLEX, I-2-7-1(B).  It continues: "Offering a supplemental hearing is required if the

proffered evidence includes any opinion evidence or a medical examination report requested

by the ALJ (e.g., a consultative examination report)."  HALLEX, I-2-7-1(C)(Note).

HALLEX I-3-2-17(B), which addresses the AC's role when the ALJ does not proffer

evidence it should have, states:  "The AC will grant review and take appropriate corrective

action if an ALJ did not proffer: A posthearing consultative examination report." And:

> When an ALJ does not adhere to policy in proffering other evidence not listed
> above, the AC will evaluate whether non-adherence resulted in a due process
> violation.  If a due process violation occurred, the AC will find there is a basis
> for granting review present and take appropriate corrective action.

HALLEX, 1-2-2-17(B).  Here, despite Plaintiff bringing the ALJ's error to its attention, the

AC did not grant review.

On a check-the-box form, Dr. Beaman opined that, despite the limitations caused by

Plaintiff's shortness of breath and COPD, Plaintiff could lift and carry up to 10 pounds

frequently; sit and stand for four hours at a time; sit for eight hours total in a workday; stand

for six hours total; and walk for five to ten minutes at a time for a total of one hour during a

workday (Tr. 523-24).  Plaintiff could frequently use both hands to reach in all directions and

overhead; could handle, finger, and feel with both hands continuously; and could push or pull

with both hands occasionally (Tr. 525).  She could frequently use her feet to operate controls

(*Id.*).  Plaintiff could tolerate occasional exposure to dust, odors, fumes, extreme cold, extreme heat, and vibrations (Tr. 527).  She could never climb, balance, stoop, kneel, crouch, or crawl (Tr. 526).  She could shop, walk a block at a reasonable pace, use public transportation, prepare a simple meal, care for her personal hygiene, and sort and handle files (Tr. 528).

A written assessment accompanied Dr. Beaman's physical RFC form.  He reported that Plaintiff told him, "[s]he experiences shortness of breath with almost any activity, for example, showering.  She can go no more than 10 steps without becoming short of breath. She can only walk about 150 feet." (Tr. 530)  Dr. Beaman observed, "[p]atient has no problem handling objects.  Memory is okay.  Concentration is good.  She can lift or carry about 5 pounds using both arms.  She has no problems sitting or standing." (Tr. 530).  His physical examination was normal – although Plaintiff had "diffuse rhonchi and wheezing," there was no sign of respiratory impairment, her heartbeat was regular, she had no pain or inflammation in her joints, she had full strength in her extremities, "no reproducible fatigue with repetitive muscle testing," good grip strength, her fine manipulation was intact, and her "straight leg raising was negative in the sitting position." (Tr. 530-31).

The ALJ summarized Dr. Beaman's findings in his written decision (Tr. 20, 22).  He assigned "significant weight to the November 2018 physical exam completed by Dr. Beaman, and only some to moderate weight for the medical source statement he completed after performing a consultative evaluation[,]" (Tr. 22) pointing out that certain aspects of the physician's findings contradicted his report.[5]  For example, Dr. Beaman found Plaintiff had

---

[5] The Commissioner issued new regulations on the evaluation of opinion evidence that apply to claims filed after March 27, 2017.  *See* 20 C.F.R. § 416.920c.  Plaintiff filed her claim on July 14, 2016; the prior regulations apply.

full range of motion of all joints, full strength in all extremities, and full grip strength, yet Dr. Beaman reduced Plaintiff's ability to push and pull to "occasional." (Tr. 22)  Also, on the medical source statement Dr. Beaman determined Plaintiff could lift up to 10 pounds (Tr. 523-24); in his written summary, he observed Plaintiff could lift five pounds with both arms (Tr. 530).

According to Plaintiff, she did not get a chance to respond to Dr. Beaman's report, and this lost opportunity matters.   If the ALJ had incorporated Dr. Beaman's reaching and postural limitations into Plaintiff's RFC – Plaintiff contends – Plaintiff could not perform the jobs the VE identified.[6]  The Commissioner admits that "Dr. Beaman opined that she was more functionally limited than the RFC assessed by the ALJ." (Doc. 26 at 13).  But to the Commissioner, "[Plaintiff's] assertion of prejudice puts the cart before the horse and is speculative, at best." (*Id.* at 16).

The Commissioner did not comply with HALLEX:  the ALJ did not proffer Dr. Beaman's post-hearing consultative report to Plaintiff and did not offer her a supplemental hearing, and the AC did not grant review to correct this error.  These violations of HALLEX cannot serve as grounds for remand in and of themselves, however.  The issue is whether these violations prejudiced Plaintiff such that the Commissioner violated her due process rights.  The Court finds that under these circumstances they did not.

---

[6] The ALJ's RFC formulation did not limit Plaintiff's ability to reach, while Dr. Beaman said she could only "frequently" reach.  The ALJ limited her to occasional balancing, stooping, kneeling, crouching, and crawling; Dr. Beaman said she could never do these postural activities.

In *Demenech v. Secretary of the Department of Health and Human Services*, 913 F.2d 882, 884-85 (11th Cir. 1990), the Eleventh Circuit vacated the district court's opinion and found that the Secretary violated the plaintiff's due process rights when it relied on a post-hearing consultative report in finding the plaintiff had experienced medical improvement and was no longer entitled to disability benefits, without giving the plaintiff the opportunity to subpoena or cross-examine the report's author.  The consultative physician's post-hearing report "was the primary basis for the ALJ's decision that Demenech was no longer disabled.  Indeed, [the consultative] report was the most prominent piece of medical evidence that contradicted the evaluations" of Demenech's other physicians, including his treating physician.  *Id*. at 884. The Eleventh Circuit concluded that the post-hearing report was "crucial to the ALJ's determination and that the ALJ should have allowed Demenech to depose and cross-examine [the consultative physician] before rendering a decision." *Id*.  And, "where the ALJ substantially relies upon a post-hearing medical report that directly contradicts the medical evidence that supports the claimant's conditions, cross-examination is of extraordinary utility." *Id.*; *see also Leik v. Barnhart*, 296 F.Supp.2d 1345, 1350 (M.D. Fla. 2003) (finding ALJ abused discretion in not permitting plaintiff to cross-examine medical experts who answered post-hearing interrogatories, "given the ALJ's level of reliance upon these reports and the fact that Plaintiff's treating physicians offered conflicting opinions."); *Ripley v. Astrue*, No. 2:08-cv-947-FtM-DNF, 2010 WL 1759554, at *7 (M.D. Fla. Apr. 30, 2010) (same).

On the other hand, in *James v. Barnhart*, 177 F. App'x 875, 877 (11th Cir. 2006), the Eleventh Circuit affirmed the district court's finding that the agency did not violate the plaintiff's due process rights despite not allowing her to cross-examine the post-hearing

11

consultative doctor at a supplemental hearing. "Because the ALJ did not substantially rely on . . . the post-hearing report to deny James benefits, *and* the report was consistent with the reports of three other consultative physicians, and contradicted only the conclusory and unsupported findings of two of James's treating physicians," there was no due process violation. *Id*.; *cf. Hoffman v. Comm'r of Soc. Sec.*, No. 2:18-cv-680-FtM-38MRM, 2020 WL 1894229, at *4 (Jan. 14, 2020) (finding no due process violation where ALJ did not schedule supplemental hearing after receiving post-hearing report; ALJ informed plaintiff of post-hearing report, report did not contradict other medical evidence, and ALJ did not exclusively rely on report to the exclusion of other medical sources), *and Terry v. Comm'r of Soc. Sec.*, No. 2:16-cv-32-FtM-CM, 2017 WL 1174232, at *6-7 (M.D. Fla. Mar. 30, 2017) (distinguishing *Ripley* and finding no due process violation despite that ALJ did not proffer pre-hearing report of medical expert; ALJ did not substantially rely on the ME's opinion, plaintiff learned of the opinion during the hearing and had six months after the hearing to challenge it, and ME did not provide any new findings).

Plaintiff's case is more like *James* and less like *Demenech*.  The ALJ did not substantially rely on Dr. Beaman's opinion, and Dr. Beaman's report does not directly contradict other medical evidence supporting her claim.  *See* 177 F. App'x at 877.  To be sure, the ALJ assigned significant weight to the doctor's findings that Plaintiff can walk one block, frequently lift and carry up to 10 pounds, sit for up to eight hours, stand for up to six hours, walk for up to one hour in an eight-hour workday, and never climb (Tr. 22).  But a review of the evidence convinces the Court that these findings were not the "most prominent piece of

medical evidence that contradicted" the other evidence weighing in favor of finding Plaintiff disabled. *Demenech*, 913 F.2d at 884.

The ALJ discounted Dr. Beaman's postural and reaching limitations, noting they "appear to be based almost entirely on the claimant's subjective allegations and other allegations appear to be based upon neither subjective nor objective signs or findings." (Tr. 22). Tellingly, as the Commissioner emphasizes, Plaintiff "does not challenge the ALJ's reasoning for rejection [Dr. Beaman's] limitations or his assessment of the medical evidence." (Doc. 26 at 17). Plaintiff's primary care physician Jamie Melichar, D.O. treated Plaintiff once a month from September to November 2016 and did not note any physical findings suggestive of postural or reaching limitations. Plaintiff told Dr. Melichar she felt fine, and at each appointment she reported "[f]eeding oneself with no difficulty, no difficulty dressing, no difficulty washing, and able to do one's own shopping." (Tr. 365, 367, 377, 385). And Dr. Beaman's findings are consistent with Plaintiff's testimony that she could walk for 10 minutes from her car to the hearing room (although Plaintiff told Dr. Beaman she could walk only 10 steps – roughly 25 feet – upon examination he found she could walk a block (Tr. 528, 530)), she could lift a "24 pack of cokes," and she can sit and fold laundry (Tr. 542-43).

The Court does not need to address whether HALLEX creates legally enforceable rights, because Dr. Beaman's post-hearing consultative report did not directly contradict other medical evidence of Plaintiff's alleged disability; the ALJ's failure to comply with HALLEX by not proffering the post-hearing report or scheduling a supplementary hearing did not prejudice Plaintiff. Neither did the AC's decision to deny review. Plaintiff's first argument fails.

**B. RFC**

Plaintiff's second argument is a re-packaging of her first:  she contends the ALJ's RFC is not supported by substantial evidence because it leaves out the postural and reaching limitations that Dr. Beaman assessed (Doc. 26 at 18).  This, in turn, tainted the hypothetical question the ALJ posed to the VE (*Id.* at 21). The Commissioner responds that the ALJ properly rejected Dr. Beaman's reaching and postural limitations, and the RFC is supported by substantial evidence.

A claimant's RFC is the most work a claimant can do despite any limitations caused by her impairments. 20 C.F.R. § 416.945(a)(1).  In formulating a claimant's RFC, the ALJ must consider all impairments and the extent to which they are consistent with medical evidence.  20 C.F.R. § 416.945(a)(2),(e).  An ALJ may not arbitrarily reject or ignore uncontroverted medical evidence.  *McCruter v.  Bowen,* 791 F.2d 1544, 1548 (11th Cir. 1986) (administrative review must be of the entire record; accordingly, ALJ cannot point to evidence that supports the decision but disregard other contrary evidence).  A claimant's RFC is a formulation reserved for the ALJ, who, of course, must support his findings with substantial evidence.  *See* 20 C.F.R. § 416.946(c); *Beegle v. Comm'r of Soc. Sec. Admin.*, 482 F. App'x 483, 486 (11th Cir. 2012) ("A claimant's residual functional capacity is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive."); *Cooper v. Astrue*, 373 F. App'x 961, 962 (11th Cir. 2010) (the assessment of a claimant's RFC and corresponding limitations are "within the province of the ALJ, not a doctor.").

The ALJ did not err in discounting Dr. Beaman's postural and reaching limitations. As a one-time examiner, Dr. Beaman's findings are not entitled to any particular weight or deference. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). The ALJ properly assigned significant weight to Dr. Beaman's findings that he found supported by the evidence, as discussed above, and discounted the rest (Tr. 22). Second, Plaintiff's complaints to her providers were primarily respiratory-related. The ALJ accounted for these by reducing Plaintiff's RFC to sedentary work with additional restrictions (Tr. 18).

Yet Plaintiff implores "[i]t is [Plaintiff's] inability to repeatedly perform these physical and postural activities on a sustained basis, due to her becoming [short of breath], having chest pain, wheezing, and coughing that is the issue." (Doc. 26 at 19). In other words, "[n]ormal muscle strength and range of motion has no bearing on whether an individual suffers from [shortness of breath] with exertion." (*Id.* at 28). But the ALJ noted: Plaintiff's wheezing improved when she used a nebulizer as prescribed (Tr. 365), she testified she grew short of breath when she "walk[ed] for you know a long period of time," (Tr. 541) and Dr. Beaman observed Plaintiff had no shortness of breath upon minimal exertion (Tr. 531). Plaintiff testified she can lift and carry a 24-pack of soda, which the ALJ estimated weighs 19 pounds (Tr. 21, 542). As explained in the previous section, the ALJ's RFC determination is supported by substantial evidence.

This dovetails into Plaintiff's contention that the ALJ posed an incomplete hypothetical question to the VE. At the close of the evaluation process, the ALJ is required to determine whether there are "other jobs" in the national economy the claimant can perform. *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). To make this

determination, the ALJ may either (1) apply the Medical Vocational Guidelines, or (2) obtain the testimony of a VE as to whether an individual with the claimant's limitations can secure employment in the national economy. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011). For a VE's testimony to constitute "substantial evidence," the hypothetical question posed by the ALJ must include all the Plaintiff's impairments. *Wilson*, 284 F.3d at 1227.

Here, the ALJ asked the VE a series of hypothetical questions. First, the ALJ asked:

The first hypothetical person is limited to light exertional limits and this person can only occasionally climb ramps or stairs but never climb ladders, ropes or scaffolds; can frequently balance, stoop, kneel, crouch and crawl. This person should avoid concentrated exposure to extreme heat and humidity as – and avoid moderate exposure to irritants such as fumes, odors, dust, gases and poorly ventilated areas and be limited to occupations that do not require frequent verbal communication. With those limitations, would there be any past work that [Plaintiff] has performed that the hypothetical person could perform?

(Tr. 554). The VE responded that this hypothetical person could work as an inspector, packer, or mail sorter (Tr. 554-55). Then the ALJ tweaked his question:

If I were to change the exertional limits on the last hypothetical – I had frequent balance, stoop, kneel, crouch and crawl. If I changed all those to only occasional and changed the occasional climbing ramps and stairs to never climb ramps and stairs would any aspect of your testimony still apply?

(Tr. 555). The VE's answer was the same. Finally, the ALJ asked: "[F]or the third hypothetical reduce the individual to sedentary but remove[ ] the limited occupations that do not require frequent, verbal communication, remove that limitation . . . would there be any work that'd be possible?" (Tr. 555-56). The VE identified the jobs of clerical worker, hand packer, and inspector (Tr. 556).

16

The ALJ ultimately found at step five that Plaintiff could perform the jobs the VE identified in his final hypothetical question.  For the reasons explained above, the hypothetical question properly excluded Dr. Beaman's postural or reaching limitations.   Plaintiff's argument fails.

### C.  Subjective pain complaints

Finally, Plaintiff contends the ALJ improperly discounted her subjective pain complaints.  In determining whether a claimant is disabled, the ALJ considers all symptoms, including pain, and the extent to which those symptoms are reasonably consistent with the objective medical evidence and other evidence.  20 C.F.R. § 416.929(a). Once a claimant establishes that her pain or other subjective symptoms are disabling, "all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability." *Land v. Comm'r of Soc. Sec.*, 843 F. App'x 153, 155 (11th Cir. 2021) (quoting *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)).

The Eleventh Circuit has established a three-part "pain standard" for the Commissioner to apply in evaluating a claimant's subjective complaints.  The standard requires: (1) evidence of an underlying medical condition; and either (2) objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (3) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged pain.  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  "When evaluating a claimant's subjective symptoms, the ALJ must consider such things as: (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and

intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side-effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms." *Davis v. Astrue*, 287 F. App'x 748, 760 (11th Cir. 2008) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)).  If an ALJ rejects a claimant's subjective testimony, he must articulate explicit and adequate reasons for his decision.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation and citation omitted).[7]

The regulations define "objective evidence" to include medical signs shown by medically acceptable clinical diagnostic techniques or laboratory findings.  20 C.F.R. § 416.929(c)(2).  "Other evidence" includes evidence from medical sources, medical history, and statements about treatment the claimant has received.  *See* 20 C.F.R. § 416.929(c)(3).  In the end, subjective complaint evaluations are the province of the ALJ.  *Mitchell v. Comm'r of Soc. Sec.,* 771 F.3d 780, 782 (11th Cir. 2014).

Here, the ALJ relied on boilerplate language in assessing Plaintiff's subjective pain complaints:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statement concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

---

[7] In 2017, the SSA issued new guidance to ALJs about how to evaluate subjective complaints of pain and other symptoms.  The SSA eliminated the use of the term "credibility" from its sub-regulatory policy, as the Regulations do not use this term.  SSR 16-3p, 2017 WL 5180304, *2 (Oct. 25, 2017).  This change "clarif[ied] that subjective symptom evaluation is not an examination of an individual's character." *Id*.

(Tr. 19).  This language directly addresses the Eleventh Circuit's pain standard and is not improper *if* supported by substantial evidence.  *See Danan v. Colvin*, 8:12-cv-7-T-27TGW, 2013 WL 1694856, at * 3 (M.D. Fla. Mar. 15, 2013), *report and recommendation adopted* 2013 WL 1694841 (M.D. Fla. Apr. 18, 2013).

Here, the Court finds that it is.  In evaluating Plaintiff's subjective complaints, the ALJ summarized Plaintiff's testimony that her shortness of breath makes it hard for her to exert herself at all (Tr. 540) and compared this to medical evidence from Dr. Beaman that Plaintiff did not exhibit shortness of breath upon minimal exertion (Tr. 531), Dr. Melichar's note that Plaintiff could perform activities, including shopping, without difficulty (Tr. 365, 367, 377, 385), and her treating oncologist's determination that she could return to her pre-cancer activities without restriction (Tr. 327, 427, 429).  The ALJ also considered Plaintiff's limited medical treatment post-operation (Plaintiff had a right upper lobe lobectomy with mediastinal lymph node dissection in August 2016 to remove her lung cancer), her total lack of medical treatment after July 2017, Plaintiff's unabated smoking habit, Plaintiff's report that her breathing improved when she used a nebulizer as prescribed, and Plaintiff's conflicting statements about her limitations (*see* Tr. 18-21).

Plaintiff dissects the ALJ's assessment of her pain complaints point-by-point, arguing that each reason standing alone is insufficient.  For example, according to Plaintiff the ALJ improperly considered her continued smoking habit in discounting her pain complaints, because she could not afford Chantix to help her stop smoking, and there is no evidence that her emphysema and COPD would improve if she quit.  And Plaintiff contends the ALJ

improperly discounted her credibility based on her lack of medical treatment after 2017, because she could not afford treatment (Doc. 26 at 28-32).

Plaintiff's argument misses the mark: the ALJ did not discount Plaintiff's pain complaints for any single reason. Instead, the ALJ examined the record as a whole, as explained above. The ALJ noted that Plaintiff told Dr. Beaman that she can only lift five pounds, yet she testified she can lift a 24-pack of soda and carry it to her shopping cart (Tr. 21). She told Dr. Beaman she can only walk 10 steps (roughly 25 feet) before becoming short of breath; Dr. Beaman observed Plaintiff had no shortness of breath on minimal exertion and determined she could walk a block at a reasonable pace (roughly 325 feet) (*Id*.).

Considering this, Plaintiff has not shown that the ALJ ran afoul of the Eleventh Circuit's pain standard. *See Holt*, 921 F.2d at 1221. The ALJ articulated specific and adequate reasons for discrediting Plaintiff's subjective pain complaints. *Foote*, 67 F.3d at 1561-62. To the extent Plaintiff asks the Court to re-weigh the evidence or substitute its opinion for that of the ALJ, it cannot. If the ALJ's findings are based on the correct legal standards and are supported by substantial evidence – as they are here – the Commissioner's decision must be affirmed even if the undersigned would have reached a different conclusion. *See Bloodsworth*, 703 F.2d at 1239. On this record, the ALJ did not err in considering Plaintiff's subjective complaints.[8]

---

[8] The undersigned reiterates that, when reviewing an ALJ's decision, the Court's job is to determine whether the administrative record contains enough evidence to support the ALJ's factual findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, ___ U.S. ___; 139 S.Ct. 1148, 1154 (2019). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Id*. In other words, the Court is not permitted to reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence

**V.      Conclusion**

Accordingly, after consideration, it is hereby **ORDERED**:

   1.   The decision of the Commissioner is affirmed.

   2.   The Clerk is directed to enter final judgment in favor of the Defendant and close

the case.

   **ORDERED** in Tampa, Florida, on September 10, 2021.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE

---

preponderates against the ALJ's decision.  *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239
(11th Cir. 1983).